William H. Lotty, Appellant, *v.* Leona Holding Corporation, Respondent.

(Supreme Court, Appellate Term, First Department, February, 1917.)

Evidence — reception of — in action by assignee of real estate broker to recover on defendant's promise to pay — parties.

    Whether, in an action by the assignee of a real estate broker to recover on defendant's promise to pay a certain amount on a real estate transaction, plaintiff could be held accountable to an alleged partner for his share of the profits, is immaterial to the issue which was solely whether or not defendant had promised plaintiff's assignor $250 absolutely or conditionally, and the reception of evidence tending to show that plaintiff's assignor attempted to gain a secret advantage over his partner, who was not a party to the action, was error.

Supreme Court, Appellate Term, February, 1917.  [Vol. 98.

Appeal by plaintiff from an order of the Municipal Court of the city of New York, borough of Manhattan, fifth district, setting aside the verdict of a jury in his favor.

Benjamin C. Ribman (Irving Ribman, of counsel), for appellant.

Julius H. Zieser (Abraham P. Wilkes, of counsel), for respondent.

Bijur, J.   Plaintiff sued for $250 alleged to have been promised to be paid to him in February, 1916, by the defendant under the following circumstances:

Plaintiff is assignee of one Landeker, a real estate broker, who on behalf of one Cosmak on January 19, 1916, secured a purchaser for some property. I shall designate Landeker as plaintiff for purposes of convenience. This purchaser was nominally one Carrie Frankfurter who, with Cosmak, signed a memorandum contract covering the proposed sale, the deed to be delivered on March first.

It is conceded that Mrs. Frankfurter in this transaction represented as purchaser her husband, Joseph Frankfurter, and the plaintiff. The relations of Mr. Frankfurter and plaintiff in that respect are expressed in a letter from plaintiff to Mr. Frankfurter in which occurs the following: "You have paid on contract $500, of which I have turned over to you $50, the understanding being that in case we decide not to take title we each lose these respective sums, but in case we decide to keep the house or sell the contract the net profit after deducting the $500 shall be divided equally between ourselves. In addition to the above I am to put into the deal whatever amount of commission will be realized, to be applied jointly."

About February eighth Mr. Frankfurter secured a purchaser for this contract, namely, the defendant, Leona Holding Corporation, represented by its president, Frederick Brown, for $800, that is, $300 above the $500 which plaintiff and Frankfurter had paid thereon. Plaintiff testified that on February tenth he and Frankfurter and others met in Mr. Brown's office. He was there shown the assignment of the contract signed by Mrs. Frankfurter under date of the day previous, February ninth, and was asked to consent in writing to the assignment and to release all his rights therein excepting commissions; but he said: " I cannot assign my rights in this contract for next to nothing. I am so convinced that this purchase is so cheap a house, that this house will be sold before the time of taking title * * * I said, ' Please step into the adjoining room,' and I said, ' Mr. Brown, it is not fair to take this property away from me because my partner is getting cold feet.' * * * I said, ' If you will give me a third of the profits if you sell before title is taken, that is on March 1st, I will sign this release.' He said, ' Shake hands on that,' and I did so, and we stepped into the office and I signed that release."

About two weeks afterwards, he says that he noticed that the property had been sold and called on Mr. Brown, who told him that on the sale he had to take other property in exchange, and then added to plaintiff, " ' You have got to wait until I sell that Union Avenue property, but instead of giving you a third of the profits, I will send you a check for $250.' I said, ' All right, Mr. Brown, send me a check when you sell the other parcels.' He said, 'All right.' " Plaintiff repeatedly demanded the $250, and when it was refused brought this suit.

Defendant's version as given by Mr. Brown, cor-

roborated in part by Mr. Frankfurter, by defendant's attorney and by the broker who brought about the sale to defendant, is in substance that all the parties met on February ninth; that plaintiff then urged that he expected to be able to sell the contract at a better price than the $800 offered by the Leona Company, and asked for a day's adjournment, which was granted. On the following day plaintiff, having failed to find a purchaser for the contract, still protested that it was being sold too cheaply, and thereupon Mr. Brown privately promised him one-third of the profit if the contract was resold by the Leona Company before March first *through the efforts of plaintiff*.

As between the two parties in interest, the latter item seems to be the only point in which they are directly at issue, plaintiff contending that one-third of the profit (and thereafter $250 in lieu thereof) was promised to him absolutely if the defendant sold the contract prior to March first, and defendant, by its president, claiming that plaintiff was entitled to nothing, unless such sale took place through his instrumentality.

While some of the defendant's corroborating witnesses testified that the conversation between plaintiff and Mr. Brown did not take place until after plaintiff had signed his consent to the transfer of the contract, Brown himself admitted that it had been before such signature. This controversy was, therefore, an exceedingly simple one and depended upon the credibility assigned by the jury to the testimony of the respective sides.

In setting aside the verdict, the learned judge below remarked: " The jury went absolutely wrong in this case. * * * It is inconceivable that the jury believed Landeker's testimony to be true. Upon his own state-

ment he took advantage of his partner by making a secret arrangement and held up the defendant by refusing to sign the release unless he received additional compensation. * * * '' The statement concerning plaintiff's taking advantage of his *partner* by making a *secret* arrangement, etc., refers to a line of testimony that was introduced at the instance of defendant's counsel, over the continuous and repeated objection of the plaintiff. Indeed, defendant's counsel went further and was permitted to bring before the jury the fact that when the original transaction was negotiated plaintiff was acting as sales broker for Cosmak, the seller, although he was interested in the contract of sale with the purchaser, Mr. Frankfurter, and over a page of testimony is directed to that point, over plaintiff's counsel's repeated objection.

We then come to this question of plaintiff's alleged improper attempt to gain a secret advantage over his '' partner,'' concerning which, as I have said, the record is replete with questions and remarks. In the first place, it is at least debatable whether under the precise terms of the agreement between plaintiff and Frankfurter, and under the circumstances disclosed by plaintiff's testimony, if believed, the plaintiff could properly be held accountable to Frankfurter for plaintiff's larger share of the profits, but the chief consideration is that whether such accountability were determined in an appropriate action to exist or not it was certainly immaterial to the issue in this case which was solely whether or not defendant had promised plaintiff the $250 absolutely or conditionally. At one point the learned judge below, in overruling objections to some of this line of testimony, remarked that it would be taken as affecting the credibility of the plaintiff. As I have shown, the question of plaintiff's

accountability was doubtful, but, even if it had been proved and determined against him in an appropriate action, it would not constitute a "vicious or criminal act of his life" so as to affect his credibility under the authorities (*Potter* v. *Browne,* 197 N. Y. 288, 293), concerning which inquiry in any event would have to be limited to his own cross-examination.

Had the verdict been given in favor of defendant, plaintiff might well, and, as I think, successfully, have appealed to the admission of this testimony as material error warranting a reversal. But it is evident that the jury disregarded it in finding in favor of plaintiff. The learned judge was, as I read the record and interpret his reasons for setting the verdict aside, in error in taking that step because of some supposedly unfavorable act on plaintiff's part in a suspected attempt to overreach his "partner," which, even had it been proved, would have been immaterial to any issue properly litigated at the trial.

Apart from the matter which I have just discussed, there does not appear to be any ground for claiming that the verdict was against the weight of evidence. Moreover, there was erroneously excluded a letter under date of March thirteenth, offered by the plaintiff, which he wrote to Mr. Brown saying: "Now that the title to the Bronx corner has been closed, I would be very much obliged to you if you would hand bearer check for $250 as agreed upon." Of course this letter standing by itself would have been a self-serving declaration and incompetent as such had it been unanswered, there being no obligation on defendant's part to reply thereto. See *Bank of British North America* v. *Delafield,* 126 N. Y. 410, 418; *Seidenspinner* v. *Metropolitan Life Ins. Co.,* 175 id. 95, 98. But as matter of fact defendant did answer the letter and the

answer was permitted to be put in evidence by plaintiff. It read: "Dear Sir: Referring to your favor of March 13th, please call to see me some morning, and oblige, etc." In view of the nature of this actual acknowledgment and reply to plaintiff's letter, the latter became competent proof (*Hirsch* v. *Lichtenstein,* 79 Misc. Rep. 31, 34; affd., 162 App. Div. 908) and the plaintiff was entitled to have the jury pass upon the question of the defendant's implied admission in failing to deny or question the statements in plaintiff's letter to which the defendant had replied. With these statements added to the proof, the weight of evidence would, to my mind, have been essentially in favor of plaintiff.

The order must, therefore, be reversed, with thirty dollars costs, and the verdict reinstated, with costs to appellant.

GUY and MULLAN, JJ., concur.

Order reversed, with costs.